O’Ngall, J.
It does not appear that any question is made under the codicil: the slaves, under it, have not, I presume, attempted to obtain any benefit. The probability is, that in no event could it benefit them. Under the clause of the will which has been already set forth at length, the question arises, Can the slaves be set free according to its directions ? To solve this question it will be necessary to examine first the law on the *3141 su^Ject emancipation *of slaves ; and then see whether, accord-J ing to law and a just construction of this will, the provisions directing and connected with the emancipation of the testator’s slaves can be carried into effect.
The Act of 1820, (Acts of 1820, p. 22,) by its preamble, recites that “ whereas the great and rapid increase of free negroes and mulattoes in this State, by migration and emancipation, renders it expedient and necessary for the Legislature to restrain the emancipation of slaves, and to prevent free persons of color from entering into this Stateand therefore enacts “that no slave shall hereafter be emancipated but by act of the Legislature.” Other provisions of that, and the Act of 1823, are intended to prevent the migration of free.negroes into this State; but, at present, it is only necessary to look to the enactment in restraint of emancipation. The great rule of construing a statute, is to construe it by the old law, the mischief and the remedy, so as to put down the mischief and advance the remedy The law, as it stood prior to the Act of 1820, allowed emancipation to take place by deed upon an examination before, and to the satisfaction of a Justice of the Quorum and five freeholders, that the said slaves were of good character and capable of gaining a livelihood in an honest way. Under this law, it seems from the preamble of the Act of 1820, there was a rapid increase of free negroes and mulattoes by emancipation. This was the evil, to remedy which the Act of 1820 was passed. The remedy provided was, that emancipation should only take place by act of the Legislature. This provision is general, and might, from the words, prohibit emancipation out of, as well as within, the State by a citizen of the State. But this is a construction altogether by the letter and not by the spirit of the law. Eor the intention of the legislature is manifest — to prohibit the emancipation of slaves within the State except by act of the Legislature. The evil was the increase of free negroes within the State from emancipation. So this was remedied, the end of the law was obtained. The removal of slaves belonging- to citizens of the State, and their emancipation in parts beyond her territorial limits, was no injury to her. They could not return upon her as free negroes; for the Acts of 1820 and 1823 provide penalties to prevent the migration of free negroes into South Carolina.
*243 The Act of 1820 could not, however, have effect upon emancipation beyond the limits of the State. For the slaves within her *limits, r*gi c when lawfully removed beyond them, ceased to be liable to her <- jurisdiction. They then became liable to another jurisdiction, and were to be held, enjoyed or disposed of, according to its laws. It is not, as I understand, denied that the owner might have removed his slaves from South Carolina and manumitted them in any State where he could lawfully do so. But if it were denied, the denial could not be sustained: for there is no law prohibiting the owner from removing his slaves from this State at any moment, and for any purpose he pleases. If he has the power to remove them, after they have crossed beyond the exterior line of the State she cannot reach out a hand to touch them for any cause; and hence, if they should be then manumitted, no person can capture them for being emancipated contrary to her laws; for they have been set free beyond her territorial limits, and beyond the operations of her laws. In Cline v. Caldwell, 1 Hill, 427-8, we recognized this principle. In Linam v. Johnson, 2 Bail. 137, it was held that a slave emancipated contrary to the Act of 1820, could be seized under the provisions of the Act of 1800 ; and that this was the only penalty which could be imposed against illegal emancipation. This being so, and there being no right of seizure for an emancipation out of South Carolina, it follows that the emancipation must prevail. But it is said, although the owner might remove from the State and set free his slaves, yet his executors cannot, by the direction of his will, do the same acts. As a general rule, to which there is no exception, unless it be by express statutory provisions, it may be laid down that the owner of property may by hi§ will direct his executors to dispose of it in any way which he could. The case of Bynum & Wallace v. Bostick & Walker, 4 Eq. Rep. 266, under the Act of 1800, does hold that a bequest of slaves to a trustee with directions to set them free is void, as being contrary to that Act: but that opinion was certainly prepared under a strange misapprehension of the law, and without looking at the Act. For it states that the “ statute expressly forbids any emancipation in any other way than by deed executed in the lifetime of the master a certain time before his decease. ” On looking at the Act, (2 Faust, 355,) it will be seen that there is not a word said about the deed being executed “in the lifetime of the master,” or within “a certain time before his decease.” This shows at once the unsoundness of that decision. The case of Lenoir v. Sylvester, and Young v. the Same, 1 Bail. *632-7-8-9, held that an executor, „ under the Act of 1800, might execute the deed and do every “ other act requisite by it, and thus give effect to a legacy of freedom. So that at the passage of the Act of 1820, an executor could have carried out and given effect to the testator’s directions to emancipate his slaves, just as well as he could have done. The Act of 1820 did not profess to abridge the rights of an executor in this respect, any more than it did the rights of the owner, the testator. Emancipation by either, in the State, could not be effected — it could only be done by act of the Legislature. But, if the Act of 1820 did not deprive the executor of the power of doing anything which his testator could lawfully do, (and in the absence of any provision to that effect, it cannot be doubted that it did not,) then it follows that a testator’s directions to his executor to remove his negroes *244 from the State and set them free, are legal and valid, and must be obeyed. For he had the power in his lifetime to do the act; and it follows that he may authorize his executor to do the same.
This makes it necessary now to inquire as to the construction to be placed on the bequests in favor of the testator’s slaves in his will. It directs in substance that the interest on their hire during the life of his wife, or on the sum of $100 each, should constitute a fund to enable them to go to St. Domingo or any other place they may choose, and to which the government may be willing that they should go, and that his executors should set them free, and pay them the sum of $100 each. In construing a will, it is a uniform rule to give it, if possible, such a construction 'that it may have effect and not be defeated. It is hence admissible to transpose words and sentences to subserve the intentions of the testator. In this bequest it is manifest that the testator intended that his slaves should enjoy freedom, not within the State, but in parts beyond her limits, where it might be lawful and proper that they should be free. This is not contrary to the law of this State. The direction to his executors to set them free must be taken to be part of the provision to “enable them to go to St. Domingo to be colonized, or to any part that they, with the ■j-o-h-i government, may *choose.” To set them free within the State, is J contrary to law ; and this the executors cannot therefore do : but they can remove them from the State to parts where emancipation is lawful, and there set them free. This comports with the testator’s intention, and is therefore admissible. The legacy of freedom here is in its words altogether executory: and according to Lenoir v. Sylvester, and Young v. the Same, 1 Bail. 637-8-9, it is the duty of the executors to give it effect. But it is said, how can the Court compel the executors to carry such a bequest into execution ? for the slaves themselves cannot, nor can any other person, for them, file a bill to compel the executors to execute a-will in this respect. But I apprehend there is in this ease, and others like it, no difficulty. For on a bill filed by the heirs to partition the slaves, the Court would, if on looking into the will they should find that the executors could execute it by sending the slaves out of the State and there set them free, order them to so discharge the trust reposed in them by the testator. In other cases, the executor’s oath to execute the will, and the fair claim which they have to the confidence of the Court by the confidence reposed in them by the testator, are sufficient guaranties that such a bequest will be faithfully executed. To remove the slaves beyond the State to the place to which they may choose to go, the testator’s estate under his directions to his executors to remove them, would have been liable to the expenses, had he not provided a fund in the interest on the sum of $100 each which he had bequeathed to them. This last sum they will also be entitled to receive on being emancipated ; for in the will it follows the bequest of freedom, and is intended to vest in them and be payable to them when they shall become free people. In this point of view, it is not liable to the objection to which it would be subject was it a legacy to slaves.
It is therefore ordered and decreed that the defendants do forthwith remove their testator’s slaves to parts beyond the limits of this State, where it may be lawful to emancipate them, and that they there do there legally emancipate and set them free; that they defray the expenses thereof out *245 of the interest from one year after the testator’s death, on the sums of $100 bequeathed to each of the said slaves when they should be set free: and that they pay to the said slaves when they do set them free as hereinbefore ordered, the sum of §100 each, and any arrears of interest which may remain after defraying the expenses of their removal and emancipation.
*It is ordered and decreed that the defendants do account to R such of the plaintiffs as may be entitled under the will, for the pro- >-' ° ° eeeds of the sale of the land and personal estate and the hire of the slaves, after deducting from the aggregate of principal the sum of $100 for each of the said slaves at the end of one year from the testator’s death; and also after deducting all sums paid properly for the maintenance of the widow, and all other proper payments and expenditures touching the estate, and ■ the costs of this case, which are to be paid out of the estate. The defendants must account for interest on the annual balances.
Johnson, J., concurred.